Good morning. Welcome to the Illinois Appellate Court, 1st District, 1st Division. Will the lawyers who are arguing the case please step up and introduce yourselves. Good morning. I'm Jerry Dombrowski for the Plaintiff Appeals. Thank you, Mr. Dombrowski. And for the Defendant Appellees, Tom Piper, P-Y-P-E-R. You're representing both the OSGC and the Tribe? Yes, Your Honor. Okay. All right. Each side will have 20 minutes and then the Appellant will have an additional, up to an additional 10 minutes for rebuttal. Why don't you let me know how much time you wish to have for rebuttal? 10 minutes is good, Your Honor. Okay. All right. We don't have a timer. You won't have a light. Just kind of keep track of it. I'll sort of close it down a little bit as your time is coming up. Also, just so you know, you probably know this already, the microphones do not amplify. They simply record. So you have to speak up so we can hear everything, okay? Thank you, Your Honor. Counsel for the Appellant, you may begin. May it please the Court, thank you for taking oral argument. As you know, I represent the plaintiff's appellants here. Initially, we need to first go to the burden on the defendants in the trial court. Defendants here and the movements in the trial court. 2619 requires the defendants here and the appellees here to show that there's no issue of material fact as to their motion. And their motion is based on tribal sovereign immunity. We believe it's a unique case for the State of Illinois, a unique case for the First Appellate District. With these set of facts, we do not believe that this can be done at the bare minimum at this time. There is simply too much conflicting testimony. Law is, frankly, unsettled in some parts, settled in others. The facts, as we have spelled out in detail in our complainant law, cannot allow, frankly, this motion to proceed and be affirmed before this court. The facts are extensive. It is not a simple breach of contract case. It is a tortious interference case. We have three separate torts that we allege against OSGC and the tribe. Can I ask you a question? Yes. Are the issues of material fact, does sovereign immunity apply and was it waived? Aren't those the keys to the case? Those two issues? Those two issues, yes. I believe that those are the keys to the case. First and foremost, I think I need to talk about whether sovereign immunity does apply. In this specific case, with these specific set of facts, we do not believe it does. And we argue that, obviously, in the trial court. We argue that here today. And I think one of the seminal cases is the Kiowa case. Obviously, a case that affirmed tribal sovereign immunity. However, that was a simple breach of contract case. And even the majority in Kiowa, and the majority was written by Justice Kennedy, essentially doubted why tribal sovereign immunity would apply in that circumstance. But they obviously affirmed that it did. In the majority opinion there in Kiowa, Justice Kennedy talks about commercial activities of tribes and how tribes are expanding into selling liquor, selling cigarettes, gaming, things like that, off reservation. And the dissent in that case essentially concurred by, I believe, on a 6-3 vote. The Kiowa court said tribal immunity did apply to that breach of contract case. When we move forward to 2014, the Bay Mills case, a case, I would say, somewhat on point, but addressed sovereign immunity head on. It was a gaming case out of northern Michigan where an Indian tribe set up an off reservation gaming and casino where the state of Michigan said you cannot do that. The tribe said, yes, we can. And we assert tribal sovereign immunity. Now, it was not a tort case. However, we do note, and I think it's important to note, that the majority in that footnote in 8 talked about tort victims. They did not have to talk about tort victims, but they went out of their way to talk about tort victims. Counsel, can I interrupt you? The reference to tort victims, though, was directed at individuals who were guests or invitees, correct? And they were unaware, purportedly, of the tribal's status with sovereign immunity. They're not talking about a third party beneficiary or a purported third party beneficiary. Judge, I think in that analysis, initially you are correct. They're talking about essentially unwitting tort victims. And I think they use that terminology. One, I think we are an unwitting tort victim. Obviously, we knew that we were dealing with the tribe. We knew that we were dealing with OSGC. We had negotiations with them. Their representations were that we were dealing with OSGC. But I believe we can be classified. First, we certainly are a tort victim. Secondly, we are an unwitting tort victim in the sense that we had signed contracts by OSGC's CEO to sign contracts with waivers. And then those contracts were signed in June and May of 2013. In December of 2013, unbeknownst to us, we were completely blindsided. The tribe voted to dissolve OSGC. With that dissolution, the whole $400 million project collapsed. And that's what we specifically pledged. So in the sense of an unwitting tort victim, I believe we are. Counsel, let me ask you. Yes. Doesn't KEOA specifically state, and Bay Mills as well, they kind of empathize with the tort victim or other victims, not victims, but people that may have issues with tribes and entities. But they both say we decline to address this. This is an issue for Congress. Do they not? I think they do, Judge. But I would assert that the Bay Mills case opened up a door for tort victims when they did not have to. Okay. Well, maybe, if I agree with that argument, what about in KEOA where they say sovereign immunity is a matter of federal law, not subject to diminution by the state. So even if the door is open, what's the state supposed to do? Judge, I think you can take the Bay Mills case and some other cases that have been decided since the Bay Mills case. We did cite the Superior Concrete case from the highest court in New York, which stated, and I will address that, stated that the specific tribal corporation did not have sovereign immunity. So, Judge, I just don't think it's as blanket as the defendant appellees assert it is. And I do believe there's kind of a second part of that analysis in the Bay Mills case with that footnote. And they're stating, unlike the state of Michigan, the unwitting tort victim who has no other remedy. And I think that is key here. We don't have another remedy except for our own home court here. And that's why we put the waivers in. We don't have another remedy against OSGC and against the tribe. And I believe the Bay Mills case talked about that. I believe the KEOA case touched on that. And when the Bay Mills case talked about the state of Michigan, they essentially instructed the state of Michigan to go elsewhere. That they should have went through the administrative process and should not have essentially brought the case into the federal court system. They maybe should have stayed in the state court system and should have dealt with it on that particular level. So they did state that the state of Michigan, unlike us. But why is there no other remedy here? Judge, once OSGC, the main actor, and the tribe, the main actor, is out, we are left with just GBRE, the LLC. I understand. But on the case that's before us, not the Green Bay case. Why don't you have any other remedy than that? I think, I believe that's it, Judge. I don't see any other way that we could go after the tribe and OSGC other than how the contract instructs us to. That's what I'm saying. Your contract says state of Illinois will sue in Illinois, right? Which we have. And you've agreed to that, though. You agree to that. Right. You agree to your own limitations. Well, we did. But, Judge, I don't think, even if we didn't agree, I don't think there's any other remedy other than local courts, either federal or state. We chose state. And if this court affirms the trial court decision, what you're saying is you're done at this early stage. Sovereign immunity precludes you from any damages. And I understand that, obviously, that sovereign immunity argument is made in other cases. And sometimes that is the result. But I emphasize this only because I believe that the U.S. Supreme Court, along with other Supreme Courts in Nebraska and in New York, have said, this is not a blanket. You have to go home. And I assert to this court that I don't think we should have to go home. I believe it should be sent back to the trial court. This is a very early stage case. Well, let me ask you something, Mr. Dombrowski. Do you agree that in order to waive sovereign immunity, that waiver must be clear and unequivocal? Do you agree with that? Yeah, I believe the wording of the waiver has to be clear. So tell me what are the facts in this case that constitutes a clear and unequivocal waiver? I believe we need to get a chance to get at that with the trial court. And the trial court didn't allow us to do that. But I believe the specific wording is clear. And there's no requirement from any court I'm aware of that says you have to say that this entity is waiving sovereign immunity. No, give me some facts that you maintain are clear and unequivocal expression of the waiver. That's what I'd like to hear. As far as the parties are concerned? As far as the parties are concerned. As far as the parties are concerned, I think we do make numerous arguments. One is GBRE LLC is essentially an instrumentality, really a shell that we all agreed would be a conduit for the deal. It was always understood in our affidavits statement, it was always understood that we were dealing with OSGC, that we were indeed dealing with the tribe. And you're saying that that's a waiver because it was understood by whom? By all parties. Okay. And I believe in them. So that's one part of it. That's one. If possible, just break it down for me in bullet, small bite-sized pieces, bullet points, if you will. Okay. What are the things that constitute the clear and unequivocal waiver? Because I think that's a big issue in this case. And I know the arguments you make, but I would like you to clarify it for me in, as I say, bite-sized pieces that I can really get my arms around. Okay. Judge, GBRE is OSGC. It really is. Is it a separate corporation? No. Well, it is. In a technical form, it is, Judge, but it's really not. That's why we make the piercing the corporate bail argument the direct participation argument. But it's a Delaware corporation. Yes, it is. And you can't pierce that bail. If we look at some of the admissions that have been made by OSGC in other cases, we cite the OSGC and GBRE versus City of Green Bay case. Now, that was on appeal with the Wisconsin Supreme Court at the time that we were writing. That has since been decided in the plaintiff's favor. They dispense with the fiction that GBRE and OSGC are separate. And they plead as one. They represent themselves as one. The court states that GBRE and OSGC are essentially one. There is no real reference to GBRE, not only in GBRE slash OSGC's pleadings, but the court dispenses with it and just deals with OSGC. I think there's also case law that would support us piercing that bail. As far as going from OSGC to the tribe, they've already admitted that they are essentially one. So really, we don't have to climb this high ladder to get to the tribe. They've done it for us. And I think our affidavits make it even clearer. The tribe, and we deposed several members of the tribe, the managing agent of the tribe, secretary of the tribe, they essentially admit that there's full control from the tribe to OSGC. So that ladder has been collapsed. The contract was signed between your clients and a separate corporation. It was signed by Mr. Cornelius, who was the CEO of OSGC, the president of GBRE. And I do want to emphasize to the panel, I don't think there's any evidence here that GBRE is somehow a separate LLC. The executives are the same. The email is the same. Mr. Dombrowski, you still haven't answered my question. And I think that's a really central issue in this case. So I'd like you to get back to that. Judge, they have waived through their entities. And they have agreed in the contract to that specific waiver. And I believe the waiver within the contract is clear, any and all disputes. So all three are on board based on their admissions, based on our affidavits, and I believe based on the evidence. Everyone is on board in this case. And Judge, if you don't think everyone's on board, I think we need a chance to prove that everyone's on board. This case is a huge, complex, complicated case. And for the trial court to essentially summarily dismiss it and say, sovereign immunity, you're done. We didn't really get a chance to present our case, frankly. Counsel, I want to follow up on Justice Cunningham's question. You were able to submit affidavits. There were no less than six affidavits submitted total. Parties from, you know, both parties submitted their executives and their representatives and their lawyers' affidavits, even, regarding the representations. So there's an affidavit in the reply brief, I think on the motion of dismiss. It's Joseph Caven, right? It's GBRE's counsel. And he indicates there was never a discussion regarding the fact that the choice of law provision or the form selection would act as a waiver of sovereign immunity. So, and there's no conflicting evidence. So are you saying the only clear and unequivocal evidence is the signature on the contracts? There's no other conduct? No, Judge, and I think our affidavits... That's what we're looking for. Our affidavits spell out that it was always understood between the parties, and I think legally it is certainly waiving sovereign immunity. That specific waiver... And our affidavits state that Mr. Caven represented himself as OSGC's counsel. Mr. Cornelius represented himself and is, in fact, CEO of OSGC and a tribal member. So based on our affidavits, we've always believed, we've always had the agreement, essentially, that we were dealing with all three entities. And for Mr. Caven to say, well, we never discussed sovereign immunity, well, that's not true. Number one, our affidavit states it's not true, but the courts are clear that you don't have to put the word sovereign immunity in it. Judge Posner was clear in the Sokogon Gaming case, Seventh Circuit case. You don't have to if you agree to be sued under any and all disputes in the state of Illinois and Cook County. That is enough. And if I may cite to the Stifel case, which I think is an important case. It's a Western District federal case. We cite it. I don't think they addressed it, frankly. Maybe they will today. But that's a 2013 case where all of the issues really in that case are issues in our case. And I think the holding, there is a waiver case. It is a commercial case. It is the defendant's home state. And that trial court held that, of course I'm talking a federal court case, but held that essentially the trial court judges in federal court are required not to decide a case under the guise of jurisdiction. That's what they talk about. Deciding on the merits under the guise of jurisdiction. That's what the trial court did here. Was that a contract case, Stifel? Yes, it's a bond indenture. There's about three or four different contracts in that case. There was a waiver. And tellingly the waiver was only signed by the tribal corporation, not by the- That is going to be my question. Who signed the contracts originally? Originally the signature was the tribal corporation. But the judge in Stifel, and this is a very recent case, it's less than two years old, stated that I am not going to decide this case on the merits while pointing to jurisdiction. Because I can't do that because I've been instructed essentially by the Seventh Circuit that I cannot. And Stifel was not decided in a vacuum. Stifel is a well-written opinion that takes into account U.S. Supreme Court cases. It actually cites Kiowa. It cites Seventh Circuit cases. I believe it cites the Elthammer-based Seventh Circuit case. It cites other cases talking about jurisdiction, talking about deciding a case on the merits and not going there. I mean, that court does talk about, well, maybe down the road, when all the evidence is in, is there a possibility of a motion for summary judgment? They say, yes, there is a possibility. But at this early stage, as we are here, I can't decide this case on the merits and summarily dismiss, especially with the facts. And we have very similar facts here. And I think ultimately, I think in Illinois, as in other states, you have to give the plaintiff a chance to prove their case. That's really what we're asking for. The discovery was quite limited and the trial court's decision very cursory. There was not a delving into this case. So I'd ask the panel, just to delve, and I know you've already done that, but if you delve into the facts and circumstances of this case and read these affidavits, which in some ways conflict, in some ways they don't, but they certainly create material questions of fact throughout. And then I will save my time if there's no further questions. Yes? Not on the issue of waiver, but the issue of does sovereign immunity apply? We've had a couple of cases, DeLille is one, and Hamatsa, if I mispronounce that, Hamatsa is another one. And those have to do with the trial court saying it does not apply. And one had to do with the American Disabilities Act and one had to do with public access to a state road. Now, in those cases, they seem to be balancing sovereign immunity versus this huge interest that disabled people would have, number one, to access, and that state drivers would have to access to their own state road. So is there anything in this case that compares to that kind of balancing test that the courts did in those two? Well, I think, Judge, given the facts that we presented regarding alter ego, regarding direct participation as spelled out in our affidavits and our complaint, we must take the complaint as it is and all well-pled facts have to be admitted. So I think with that, the analysis needs to be made and I think it needs to be made at the trial level. And, Your Honor, you're right that those are not quite on point facts, but we present those cases unlike the defendants who say, you know, sovereign immunity is it, it is ironclad, it's just not. And frankly, it's being eaten away not only, I believe, by the U.S. Supreme Court, but by other state courts, by the highest courts in other states like Nebraska and New York. It's not a blanket, and as we know in the state of Illinois, it's not a blanket. Sovereign immunity, we are the state, you go home. That's essentially what they're saying to us and we ask for a chance from this panel to actually present our case eventually to a jury.  Thank you. Mr. Piper? Thank you, Your Honor. Counsel. And may it please the Court. I do agree that since the Santa Clara Pueblo case in 1978 and the Cairo case in 1998 and all the way through the Bay Mills case just last year that the Supreme Court has said that the only way that a court can find that a tribe or a tribal entity has waived its sovereign immunity is if the waiver is clear, express, unambiguous, and unequivocal. In this case, we have two contracts. Both contracts identify the parties. Both contracts are signed in the capacity by Mr. Kevin Cornelius as the chairperson for GBRE. There's no ambiguity in either of those circumstances. What all the affidavits that counsel has been talking about both in his complaint and his briefing and his argument that he says under 619 create genuine issues of material fact we believe are inadmissible because of the immigration clauses. What counsel did in his reply brief, he relied upon the Gassner case and he said even if contracts are unambiguous, it is all right under the provisional admission standard to go and look at the facts anyway to see if there's any latent ambiguity. This district has resoundingly rejected the provisional admission standard most recently in the Mid-States reinsurance case in 2014 but more importantly in the air safety case the Illinois Supreme Court said where there are integration clauses, the provisional admission standard does not apply it never applies. All of the facts about pre-contracting discussions about who said what to whom are we believe irrelevant as a matter of law. The contracts are the contracts the parties are identified and the provisional admission standard does not apply. All of the rest of what counsel said were the facts that the court was asking for as to what shows an admission were with regard to the relationship between the tribe OSGC and GBRE. By the way, he left out two important entities. It goes the tribe then there's OSGC then there's Oneida Energy then there's Oneida Energy Blocker and then you finally get to GBRE. No court to my knowledge and I don't represent I know all of the cases in union law but my knowledge no court has ever applied the piercing the corporate veil or alter ego to a tribal sovereign community situation. But if you did and you went from GBRE you wouldn't go to OSGC and the tribe you would have to see whether Oneida Energy Blocker was an operating entity and then you would have to pierce that veil and you'd have to do it all the way up and there's nothing in the record that suggests that. Well counsel let me ask you this. Yes. OSGC did they wire the $50,000 originally? They wired $50,000 yes as an underwriting for the financing of the transaction. They did. What's your argument on that? That's a little unusual that why didn't GB remade $50,000? I mean you've got another entity fronting that money. Because GBRE was to be financed and this is why the alter ego piercing wouldn't apply anyway. There's no insolvency here. They were to be financed by a $21 million loan. But at that point in time they didn't have cash. So an upstream subsidiary loaned money to a downstream subsidiary. Happens all the time. That doesn't create an identity between them because a parent will advance money. But even if it did, let's say the apparent, let's say agency applies, the apparent authority applies none of which we agree with. The alter ego applies. All that does would mean that OSGC and the tribe were parties to this but the only thing they are relying on in the contract for an unequivocal waiver of sovereign immunity is a forum selection clause. No court has ever held that a forum selection clause is a waiver of sovereign immunity. The cases that counsel relies on all have either express waivers of sovereign immunity or they have arbitration clauses where the party has agreed to be bound by the arbitration. And the C.L. Enterprises case was a Supreme Court case that finally put to rest both the Alfamir Gray case and the earlier case by Justice Posner that said arbitration clauses can be a waiver of sovereign immunity. But that's a far cry from a forum selection clause. And the case that we cited, one of the cases that we cited on that issue, was from Colorado. It was Judge Marsha Krieger in the District Court case in Breakthrough Management. And what Judge Krieger said was that there's a difference between where somebody can be sued and whether somebody can be sued. Nobody can prevent a party from suing a tribe. So you can put in a forum selection clause that only says if you're going to sue or if we're going to sue, here's where it will take place. But an arbitration clause I'm sorry. The arbitration clause is much different because nobody can make a tribe arbitrate. So that is where a tribe is agreeing to a dispute resolution process and then agreeing to be bound by the outcome. And the Danica Funding case that we cited parented that exact same finding that there's a big distinction between the two. Your Tribal Ordinance 14.6-2 talks about who can waive. Yes. A resolution of the General Tribe Council. Yes. Resolution by Oneida Business Committee. Yes. And resolution by a tribal entity. Yes. Could Green Bay have waived? No. No, because it doesn't have it. But why aren't they a tribal entity? Because they are not incorporated under tribal law. But is that how it's defined? Yes. You have to be incorporated. Can it be organized by which it says delegated authority to waive? Does it actually say incorporated? In this area of Indian law there was a question as to how far the arm of the tribe can go. And there were cases that even at the time of breakthrough management that said you can be an arm of the tribe even if you incorporate under a state law. That has been overruled and the only way you can be an arm of the tribe and be entitled to sovereign immunity is if you're either a recognized tribe or you are incorporated under tribal law. Once you make that break and you have availed yourself of the corporate law of a state, at that point in time you can't say you can't be treated like any other citizen of the state and be sued. So the whole thing about this contract is you have GBR Mr. Piper, that's the argument that your opponent's making. He's saying that you made that your client made that break and essentially placed themselves at the under the jurisdiction or under the auspices of Illinois law. That's his argument. I know you don't agree with it but I'd like you to respond. I don't represent GBRE. GBRE did that very thing. OSGC did not. OSGC is a tribally created corporation under the tribal laws. And the tribe is a Native American tribe and recognized as such. Counsel, notwithstanding your argument on air safety, I want to go back to the facts a little bit. Just as a matter of policy, don't you think by encouraging a tribe to set up a mechanism that allows it to be completely insulated from any contract or tort liability, do you think it will advance or encourage other parties to contract or do business with the tribal entities in the future? I think as long as they are transparent. Do you think that was transparent in this case, that the tribe was not purportedly or sensibly, under your argument, involved in any way? When they first submitted an agreement, it was to be a joint venture with the tribe and that was rejected. They knew that GBRE was owned by the tribe. More to the point, would it encourage doing business with an actual tribe or a tribal entity? It's on their website. The Constitution is available. Anybody practicing in the area knows about sovereign immunity. The principals here were attorneys. It isn't like a corporation. This is a sovereign nation. It would be like saying, well, England, people should know that they should contract with England. Well, yes, if they waive their sovereignty, but that's a special attribute of a sovereign nation. If they had hit it completely, that would be one thing. They could have asked at any time, we will not do this deal unless the tribe and OSGs are a party, but more importantly, that the contract not just have a forum selection clause. At that point, sovereign immunity would have become an issue. When you are just contracting with GBRE, there would be no reason even to go into sovereign immunity because under the law, GBR just does not entitle to sovereign immunity. I do want to touch on the tort issue. In their reply, counsel said that no case has been cited in this court on showing that torts were still subject to sovereign immunity, but that is just not correct. Under the Rosebud case, 8th Circuit, that in fact opposing counsel cited, that is a case very similar to this. There were contract claims and there were also tort claims. And the court found, because there was an arbitration clause in the underlying agreement, that the contract claims of sovereign immunity had been waived. However, the court found an arbitration clause in a contract cannot waive sovereign immunity as it applies to the tort claims and it dismissed the tort claims. In the American case that we cited to the court, that was a wrongful death and personal injury claim. 8th Circuit in 2011 the tort claims were dismissed on sovereign immunity. There are a number of cases where that has taken place. I do want to talk about the Hamastra case and the Holland-DeLitt case. The Hamastra case really is not a case that stands for the proposition that tort claims are not subject to sovereign immunity. The issue in the Hamastra case was a tribe went out and bought some land and there was a road running through it. The tribe was going to block access to that road. And the plaintiff, for any land owners, brought a suit and said that's a public road. That's what was pleaded in the complaint. What the court said was, at this stage, I have to take the pleadings on their face. I have to assume that's true. If it is a public road, there can be no sovereign immunity here. Because they don't own the road, they don't control the road, so they cannot assert a sovereign immunity defense with a land that they have no interest in or rights in. The Holland-DeLitt case, which you asked about Justice Connors, that was an EDA case. That's a whole different kettle of fish here where you're dealing now with congressional waiver of sovereign immunity. In that area, a statute of general applicability can be found to apply to a tribe, and then the question is did Congress intend to waive sovereign immunity thereafter? And the court found that Congress had not intended in that case to waive sovereign immunity because of the remoteness of the place for the disabled people not having access to be completely unconnected. And the court very narrowly said that where a federal statute of general applicability and a violation off reservation and no information alerting the plaintiffs that are owned by the tribe, then sovereign immunity does not apply. That narrow ruling doesn't apply in this case. We have no federal statute, and we do not have a plaintiff who had no information suggesting that it was dealing with a subsidiary owned by a tribe. In fact, in an August 13, 2013 letter, the parent of the plaintiff sent a letter to OSGC saying we are partnering with your subsidiary GBRE and we would like your cooperation. For them to say they didn't understand the entity with whom they are partnering I think is belied by that letter. Mr. Piper, there's undisputed evidence, correct, that the parties that were contracting on behalf of GBRE were using the OSGC letterhead, the email addresses, the offices, even incorporated into the schedule for the agreement that there would be payments made on behalf of OGSC, correct? Yes. Why would it be not reasonable for the parties contracting for ACF to assume that they had authority under OGSC's auspices or resolutions? Well, they did have authority, GBRE did have authority to enter into this contract. I'm sorry, I misstated it. Why wouldn't they believe that OGSC was the primary conductor of this vehicle that was going to contract with ACF? They may very well have believed that OGSC had influence on the subsidiary and the transaction. But two things, that doesn't translate into OSGC being a party to a written contract where the parties are expressly identified and there is an integration clause. But again, even if that were the case, all it would mean is OSGC would be bound by the contract. The only thing in the contract that even resembles a waiver here is a form selection clause. And a form selection clause has been rejected and never accepted by any court as a waiver of sovereign immunity. All the cases they rely on are arbitration cases. Or, in the Alfheimer-Gray situation, which I spent a lot of time talking about, I agree, it was two. It was both a waiver of sovereign immunity and an arbitration clause where the tribal entity said we will be bound by the outcome of the arbitration. And I think that is markedly different than a form selection clause. Counsel, remind me, I might be incorrect, but I thought in one of the affidavits it said that it was represented to by Mr. Cornelius, I believe, that they were using Green Bay only for tax purposes. And the real entity and interest was the tribe. That statement was made in an affidavit of a statement that was purportedly made and has been disputed by our client prior to negotiating the contract and we believe that that's inadmissible under the air safety standard. But even if it were true, it would just make them parties to a contract that has a form selection clause and no other waiver language. Mr. Piper, the argument that Mr. Dombrowski is making while it may not be clearly stated like this, it's similar to the tribe knew all along they were encouraging this entity to conduct this business and for some reason as it got further along the continuum they decided not to go forward and then they said, oops, we have sovereign immunity. And he hasn't said this but that's how I understand his argument to be in substance and you shouldn't be allowed to get away with that and a jury should be able to see whether or not this is in fact what the tribe did. I mean, that's what I understand him to be saying. What's your response to that? I think that is what he is saying, Your Honor. The response then goes again to the integration clause in the contract but it also goes to unfortunately there is a serious dispute. The tribe never even knew, this is not in dispute, it's in Patricia Holst's affidavit that's part of the record that the tribe never knew these contracts existed until after Mr. Dombrowski made his claim. And they are saying that because the tribe dissolved Oneida 7 Gens that showed an intentional interference with the contract. The tribe had good grounds and alternate grounds to dissolve OSGC. And at the time it dissolved it, it never even knew that the contracts existed. OSGC knew that the contracts existed. But that doesn't get to a factual dispute, Your Honor, I respectfully submit because you still, all that would be would be that they would be parties to a contract and there has to be an unequivocal and expressed waiver of sovereign immunity there under governing federal law and a foreign selection clause just doesn't do that. That brings me back to my original question that I asked your opponent, what is the clear, I mean that's not a question for you, it was for him, but you've come full circle for that. Counselor, I would like you to just address one last question. It's the opponent's alternative argument that worst case scenario OGSC should not be extended sovereign immunity because it's not technically an arm under the Inouye and I think Superior cases. Thank you, Your Honor. And I would cite the court that this is in a brief to the Chalofsky case. It's a 2014 case and I'm quoting, when a party acquiesces to a trial court's ruling, even if it is improper, the party cannot test the ruling on appeal. That is markedly different than a party simply not raising an issue below and then raising it for the first time on appeal. What counsel has said is that principle that if you don't raise it below you shouldn't raise it on appeal is essentially an admonition and it isn't a cardinal rule. But when a party concedes a point in the trial court and then tries to raise it on appeal, that is not allowable. In this case we raised whether OSGC had sovereign immunity whether it was an arm of the tribe in our opening brief because we figured that would be an issue. That was not disputed in their response. In our reply brief, in a footnote, we said to the court, apparently there's no issue that both sides have immunity. It's just a question as to whether it was waived. And the oral argument in front of the trial court, I made that same statement and recited to the transcript in the record, in our brief and there was no response to that by Attorney Dombrowski and then in her ruling, Judge Brennan said, in a very short ruling from the bench, that she agreed that the issue as to whether either party had sovereign immunity or not had been waived because it had not been contested. So the issue was fully presented to the court, never contested and the court ruled on it and now what he wants to do is to revive it in front of this court. But if it were to be revived, the only case that he really relies upon is the Sue Perrier case. It's a 2014 New York court case. We believe there are a lot of factual distinctions but the critical distinctions of that case are that the entity in that case asking for sovereign immunity was an entity that financed and owned a golf course. It owned the property and none of the money from that entity under any circumstances could flow upstream. And the court expressly said that there was devoid of evidence that a lawsuit would directly or indirectly affect the tribe. And it said the golf course entity owned the property and the revenues were not used for tribal purposes to improve life on the reservation. Here, OSGC manages 13 properties of 11 of which are owned by the tribe. All the earnings that come in from those management are paid in the form of lease payments, number one, to the tribe. They all go to the division of housing management. They are used for tribal purposes for low-income loans to members of the tribe to buy property. And then if there are any profits above the operating expenses needed for OSGC, those all flow upstream to the tribe and are used for tribal purposes. So even if you applied what the New York court did, which was exalt the financial relationship condition, which has been rejected in the management federal case, by the way, we believe that would satisfy. So even if it had not been weighed below and you applied the New York case standards, it would still say that OSGC was entitled to sovereign immunity. And I really took too much time. I'm sorry. Thank you. A rebuttal? Thank you again for this last opportunity. I'll try to hit every point I believe Mr. Piper has made. First off, as far as the integration clause is concerned, that's not in my opinion a valid argument. They have presented facts in their motion regarding sovereign immunity. I am required to respond to those facts. That is obviously something outside the body of the contract. So the integration clause does not apply. Secondly, we're not trying to change the contract. We're trying to enforce the contract. It is the defendant appellees here that are trying to get out of the contract. So it's them that are bringing in issues outside the four corners of the contract that we have to address. And so that's not a valid argument. As far as the forum selection clause, what they call the forum selection clause, I won't read it to the court. I know the court has read it themselves. But it talks about any and all disputes. And if we go to Judge Posner's decision in the Sokogon gaming, that's what he talks about. It doesn't have to have arbitration in there. It doesn't have to have the word sovereign in there. And it does not have to have the word immunity in there. It's clear and plain, and it's in both contracts. Moving forward, as to the tribal ordinance, there's no way that we can affect the decision making of the Oneida tribe. We can't get into their board meetings as far as the ordinance is concerned. The CEO of OSGC signed these contracts and represented throughout that it was an OSGC contract. It is a tribal contract. That's where the money comes from. Everyone knew that GBRE was a shell for this purpose. And we know from our own law in Illinois, also certain federal common law, that you can pierce a corporate veil. And we're not alleging fraud. They have alleged in their briefs that well, you have to say this was some type of fraudulent transaction. No, we don't. All we have to do is show facts that show that this was a mere instrumentality, that it was an alter ego, that it was a shell. One of those things, and we have done that in our briefs, through our affidavits, and actually through our complaint. If we all just go back to the complaint, I think just on its face, this trial decision has to be reversed. And as far as OSGC being referred to in the contracts, they are. There's no question that they are. In two schedules, I believe attached to the lease, OSGC is there. Also, OSGC is there when the defendant's affidavits talk about the loan guarantees and the letters. They're all referring to OSGC. OSGC was in this from the get-go, and as one of our affidavits states, we weren't even dealing with GBRE initially. We were dealing with OSGC. And then we were dealing with the lease for tax purposes. And we agreed. Let's get this deal done. And just overriding everything is really the issue of fundamental fairness. Is it fair under the law and under these complicated facts, under this complex case, is it fair for us, an Illinois plaintiff, an Illinois tort victim, is it fair to us to say, go home, we've got all the facts we need, they're clear, there's no material facts here? I don't think that this panel can do that, and I hope this panel doesn't. Fundamentally, we're asking for a chance for our case. I think we are asking for a chance, and it's strong under the law, and it's strong under the facts. And we don't want anyone to go home. We just want to fight it out. Thank you. Thank you. I want to thank both counsel for preparing the briefs and for presenting their arguments. The court will take the matter under advisement. Thank you.